IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01305-PAB

CHRISTEN ELAINE GOWER MURPHY,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff Christine Elaine Gower Murphy's complaint [Docket No. 1], filed on June 3, 2009. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On March 1, 2006, Ms. Murphy protectively filed an application for benefits under Title XVI of the Act, R. at 124, and on September 24, 2007, she filed an application for benefits under Title II of the Act. R. at 132. She alleges a disability onset date of November 24, 2005. R. at 129. After Ms. Murphy's claim was denied at the initial level, R. at 96-101, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 102. An ALJ conducted a hearing in April 2009. R. at 19-53. In addition

to Ms. Murphy's testimony, the ALJ received the testimony of a Vocational Expert ("VE"). R. at 50-53. On September 5, 2008, the ALJ determined that plaintiff was not disabled within the meaning of the Act. R. at 18. Ms. Murphy appealed this decision to the Appeals Council, who declined review. R. at 1-4. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as

a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B.  The ALJ Decision

In his September 5, 2008 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that Ms. Murphy had not engaged in substantial gainful activity since the date of her application, R. at 12. At step two, the ALJ determined that plaintiff had the following severe impairments: affective disorder, anxiety, and Asperger's Syndrome. *Id.* At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ then turned to the task of determining plaintiff's RFC and found that Ms. Murphy had the residual functional capacity to perform "a full range of work at all

exertional levels but with the following non-exertional limitations: no complex tasks (SVP-2 or less) (G.E.D. 1-2) and only occasional dealing with the general public." R. at 13. In applying this RFC at step four, the ALJ found the plaintiff was not able to perform her past relevant work. R. at 16-17. At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. R. at 18. In determining the number of jobs plaintiff could perform, the ALJ cited to and interpreted the Social Security Administration's Medical-Vocational Guidelines, as well as the testimony of the VE. R. at 17-18. Based on his step-five findings, the ALJ concluded that Ms. Murphy had not been under a disability, as it is defined under the Act, from her alleged onset date of November 24, 2005 through the date of his decision. R. at 18.

### C. Plaintiff's Objections to the ALJ Decision

In her appeal, plaintiff objects to the ALJ's finding of no disability on three grounds: (1) that the ALJ erred in assessing the opinions of Dr. Stephen Witty; (2) that the ALJ erred by not including all the limitations provided in Dr. Gayle Frommelt's report; and (3) that the ALJ improperly engaged in selective evidentiary review.

#### *1. Assessment of Evidence from Dr. Witty*

Plaintiff argues that the ALJ erred by failing to properly assess the medical evidence provided by Dr. Witty. *See* Docket No. 8 at 6-13. The plaintiff refers to Dr. Witty as a treating physician; however, Dr. Witty only met with plaintiff from May 25, 2006 through June 13, 2006 in order to perform a neuropsychological evaluation. R. at

438. Such a brief period of treatment does not qualify Dr. Witty as a treating physician under the Social Security regulations. *See McTaggart v. Astrue*, 342 F. App'x 373, 375 (10th Cir. 2009) (finding that a doctor who claimant had visited three times in three months did not constitute a treating physician under 20 C.F.R. § 416.902). Therefore, the ALJ was not required to state the weight that he gave Dr. Witty's opinion or give "give good reasons" for this weight, rather "he need only have considered" Dr. Witty's opinion. *See id.* at 374. The ALJ's report clearly evidences his consideration of Dr. Witty's opinion, *see* R. at 14; therefore, the ALJ did not err in his assessment of Dr. Witty's evaluations. Nor does the assessment of plaintiff's functioning in Dr. Witty's report conflict with the RFC formulated by the ALJ. *See* R. at 438-44.

### 2. Limitations from Dr. Frommelt

Plaintiff argues that the ALJ erred by relying on Dr. Frommelt's report to generate plaintiff's RFC but by failing to include in the RFC all the limitations Dr. Frommelt provided. *See* Docket No. 8 at 13-14. Dr. Frommelt is a state agency psychologist who reviewed plaintiff's medical records and completed a mental residual functional capacity assessment form. R. at 463-66. In the "Summary Conclusions" section of the form, Dr. Frommelt indicated that plaintiff experienced moderate limitations in the following areas: "the ability to carry out detailed instructions"; "the ability to maintain attention and concentration for extended periods"; "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "the ability to accept instructions and respond appropriately to criticism from supervisors";

"the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and "the ability to respond appropriately to changes in the work setting." R. at 463-64. In the "Functional Capacity Assessment," Dr. Frommelt concluded that the plaintiff "retains the mental ability to do tasks not involving significant complexity or judgment which could be learned in up to 3 months period of time. She is able to tolerate and manage social interactions as long as contact is not frequent or prolonged." R. at 466.

The ALJ accepted Dr. Frommelt's opinion, finding it "well supported" and "consistent with the evidence of record," R. at 16, and found that plaintiff retained the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: no complex tasks (SVP-2 or less)(G.E.D. 1-2) and only occasional dealing with the general public." R. at 13. Although the ALJ did not specifically include every moderate impairment listed in Dr. Frommelt's opinion, the ALJ formulated an RFC based on Dr. Frommelt's functional capacity assessment and this RFC was consistent with the moderate limitations provided by Dr. Frommelt in her summary conclusions. The ALJ restricted plaintiff to unskilled work not involving complex tasks, reflecting Dr. Frommelt's finding moderate limitations in plaintiff's ability to carry out detailed instructions and to maintain concentration for extended periods. The ALJ also restricted plaintiff to jobs requiring only occasional dealings with the public, reflecting Dr. Frommelt's finding moderate impairment in some social interactions.

Plaintiff argues that the ALJ's RFC did not address Dr. Frommelt's moderate restriction in plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods." Docket No. 8 at 16. However, the Tenth Circuit has held in similar circumstances that a finding of moderate limitation as to this mental activity was not inconsistent with an RFC analogous to plaintiff's. *See Foy v. Barnhart*, 139 F. App'x 39, 44 (10th Cir. 2005) (affirming an RFC of "work which involve[s] only incidental contact with the general public, co-workers, supervisors, and which is basically task oriented, not driven by production quotas, and generally involves simple one to two step tasks" despite moderate restriction in ability to complete normal workday mental activity). Therefore, the ALJ did not err in his treatment of the limitations provided in Dr. Frommelt's opinion.

### 3. Selective Review of Evidence

Plaintiff finally argues that the ALJ erred by selectively reviewing or "cherry picking" the evidence in the record and focusing only on the evidence supporting a finding of non-disability. Docket No. 8 at 17-21. Plaintiff first contends that the ALJ improperly disregarded several assessments of plaintiff's Global Assessment of Functioning ("GAF"). The GAF "is a subjective determination based on a scale of 1-100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting *DSMV-IV* at 32). On November 25, 2005, plaintiff admitted herself to Parkview Medical Center, complaining of suicidal thinking. R. at 215. Dr. Robert E. Tonsing assessed her GAF as 50 on admission.[1]  R. at 217. On December 3, 2005, plaintiff was discharged and her GAF

---

[1] A GAF score of 41-50 corresponds to "serious symptoms . . . OR any serious impairment in social, occupational or school functioning. . . ." *DSMV-IV-TR* at 34.

was assessed at 55-60.[2]  R. at 206.  On February 4, 2006, plaintiff again admitted herself to Parkview and Dr. Tonsing assessed her GAF at 50.  R. at 272.  Plaintiff was discharged on February 10, 2006 with a GAF score of 55. R. at 248.  On March 7, 2006, plaintiff sought psychiatric care and was assessed with a GAF score of 50.  R. at 288.  On March 24, 2006, upon psychiatric examination, plaintiff's GAF again increased to 55.  R. at 279.

Plaintiff is correct that the ALJ did not specifically discuss plaintiff's multiple GAF scores of 50.  *See* R. at 13-14.  But an ALJ is not required to discuss every piece of evidence in the record so long as the record "demonstrate[s] that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . . A GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004).  Here, however, plaintiff's GAF consistently returned to moderate levels, 55 or above, within a short time of its dipping down to 50.  *Cf. Sheley v. Astrue*, 2010 WL 551400 at *5 (D. Colo. Feb. 5, 2010) (remanding where a treating psychiatrist "continued to assess [plaintff] as having a GAF of 35" throughout the relevant time period); *Blake v. Astrue*, 2008 WL 2224847 at *6 (D. Kan. May 27, 2008) (remanding where records showed "12 findings of a GAF score of 50, and only 1 finding of a GAF score of 50-55").  Moreover, the ALJ's opinion discusses the oscillations in plaintiff's mood and symptoms during this period and it demonstrates a consideration of the

---

[2] A GAF score of 51-60 corresponds to "moderate symptoms . . . OR any serious impairment in social, occupational, or school functioning . . . ." *DSMV-IV-TR* at 34.

entirety of the record, notwithstanding its failure to mention the lower GAF scores. *See* R. at 13-14; *Clifton*, 79 F.3d at 1009-10. Therefore, the ALJ did not err by not specifically discussing this evidence.

The ALJ also did not err, as plaintiff argues, by failing to discuss her suspension from college and the accommodations the school afforded her when she re-enrolled. Docket No. 8 at 18-21. In particular, plaintiff points to a letter from a treating source addressing her return to college and suggesting several accommodations that would help "this young woman attain her goal of post-secondary education." R. at 446. Licensed Clinical Social Worker Suzan A. Steele suggested that plaintiff would benefit from a mediator giving "clear, concrete directives in written form in addition to verbal communication," leeway with deadlines, more time for test-taking, and a test-taking environment free from distractions. *Id.* These modifications do not demonstrate that plaintiff could only perform "sheltered work," as plaintiff suggests. *See* Docket No. 8 at 19; 20 C.F.R. § 404.1573(c)(1)-(6). Moreover, these modifications are consistent with plaintiff's RFC as formulated by the ALJ. The ALJ did not err by not explicitly mentioning plaintiff's suspension from college due to her threatening self-harm, *see* R. at 245-46, as none of the evidence related to her suspension conflicts with her RFC. The ALJ explained, "[t]he records show that the claimant was able to accomplish higher education with some reasonable modifications, such as, a mediator, written instructions, extra time with assignments and private testing with few distractions." R. at 14.

### III.  CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law.  As a result, the Commissioner's decision is AFFIRMED.

DATED January 31, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge